<u>**FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
SEAN M. SEXTON and PATRICIA SEXTON,    :     Hon. Joseph H. Rodriguez

      Plaintiffs,                                            :     Civil Action No. 09-5829

  v.                                                              :     OPINION

THE BOYZ FARMS, INC., CHUCK B. SUTTON,:
HOPE BALCERAK, ZURICH AMERICAN
INSURANCE CO., CITIZENS UNITED                :
RECIPROCAL EXCHANGE, and JOHN
DOE(S), a fictitious name, names, entity or        :
entities, jointly, severally or in the alternative,
                                                      :
      Defendants.
_____  :

**APPEARANCES**:

    Craig R. Fishman
    Fishman Littlefield & Fishman
    204 White Horse Pike
    P.O. Box 398
    Haddon Heights, NJ 08035
    (Attorney for Plaintiffs Sean M. Sexton and Patricia Sexton)

    Valerie Kellner
    Rawle & Henderson LLP
    The Widener Building
    One South Penn Square
    Philadelphia, PA 19107

    Ryan Francis Michaleski
    Campbell Campbell Edwards & Conroy PC
    690 Lee Road, Suite 300
    Wayne PA 19087
    (Attorneys for Defendant Zurich American Insurance Co.)

**RODRIGUEZ, SENIOR DISTRICT JUDGE**

    This matter is before the Court on a motion for summary judgment filed by

Defendant Zurich American Insurance Co. ("Zurich") [Dkt. Entry No. 25] and a cross-

motion for summary judgment filed by Plaintiffs Sean M. Sexton and Patricia Sexton ("Plaintiffs") [Dkt. Entry No. 26].  The Court has considered the written submissions of the parties and heard oral argument on the motions on April 6, 2011.  For the reasons stated below, Defendant's motion will be denied and Plaintiffs' cross-motion will be granted.

## I.  Background

On December 18, 2007, Plaintiff Sean M. Sexton was injured as a result of a motor vehicle accident in which the tractor-trailer he was operating collided with the vehicle of an uninsured motorist, Hope Balcerak.  The tractor-trailer Sexton was operating was owned by his employer, Casie Pro Tank ("Casie").  At the time of the accident, Casie was a named insured under a policy of insurance issued by Defendant Zurich, effective from August 18, 2007 until August 18, 2008 ("Zurich policy").  Sexton was an "insured" under the Zurich policy because he was occupying a vehicle owned by a named insured.  At the time of the accident, Sexton was also a named insured under a personal automobile insurance policy issued by Citizens United Reciprocal Exchange ("CURE policy").

The Zurich policy provided uninsured/underinsured motorist ("UM/UIM") coverage up to a maximum amount of $1,000,000.  The CURE policy provided a maximum of $15,000 in UM/UIM coverage.  The Zurich policy contained a "Limit of Insurance" provision, which provided:

> . . . However, subject to our maximum Limit of Insurance for this coverage, if:
> (1)   An "insured" is not the individual named insured under this policy;
> (2)   That "insured" is an individual named insured under

> one or more other policies providing similar coverage; and
>
> (3) All such other policies have a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage;
>
> then the most we will pay for all damages resulting from any one 'accident' with an 'uninsured motor vehicle' or an 'underinsured motor vehicle' shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that 'insured' as an individual named insured.

(Zurich's S.J. Br., Ex. B.) This provision, otherwise known as a "step-down" clause, is a commonly used contractual device contained in motor vehicle liability policies issued to business entities. The purpose of the step-down provision is to lower the UM/UIM coverage available to an employee to the amount of coverage available under the employee's personal motor vehicle insurance policy. On September 11, 2007, the New Jersey Legislature passed a law prohibiting the use of step-down clauses within the State.

On August 5, 2009, Plaintiffs filed a civil action in the Superior Court of New Jersey, Law Division, Atlantic County, against Balcerak and other parties alleged to have caused the accident. The action was properly removed to this Court on November 16, 2009 [Dkt. Entry No. 1]. Plaintiffs filed an Amended Complaint on May 31, 2010, adding claims against Zurich and CURE for UM/UIM benefits under their respective policies [Dkt. Entry No. 12].

Zurich now moves for summary judgment, arguing that if Balcerak is found liable for any of Sexton's injuries, the maximum amount of UM/UIM benefits Sexton can recover under the Zurich policy is $15,000 pursuant to the policy's step-down clause because the policy was entered into before the prohibitory law was passed. Plaintiffs

cross-move for summary judgment, arguing that the Zurich policy's step-down clause in unenforceable because the accident at issue occurred after the law was passed. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There are no genuine issues of material fact in this case. The only question to be decided at this time is whether, as a matter of law, the step-down clause in the Zurich policy limits Sexton's UM/UIM benefits claim which resulted from his accident that occurred three months after the legislation was passed.

## II. Discussion

In 2005, the New Jersey Supreme Court upheld the enforceability of UM/UIM step-down clauses. Pinto v. N.J. Manuf. Ins. Co., 874 A.2d 520, 524 (N.J. 2005). The Pinto court noted that "[o]ur case law recognizes the legitimacy of step-down provisions even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance." Id. In response to Pinto, the New Jersey Legislature passed S-1666 ("the Amendment") on September 10, 2007 which expressly prohibits the use of UM/UIM step-down clauses in the State. The Amendment, codified as N.J. Stat. Ann. § 17:28-1.1(f), provides as follows:

> Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, … issued in this State to a corporate or business entity … shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate

>or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

N.J. Stat. Ann. § 17:28-1.1(f).  The Legislature directed that "[t]his act shall take place immediately."  L. 2007, c. 163, § 2.  However, the Legislature was silent as to whether the prohibitory language of N.J. Stat. Ann. § 17:28-1.1(f) applies to claims brought for accidents occurring after September 10, 2007, pursuant to policies that were in existence when the Amendment was passed.

A statute dealing with substantive rights, such as the common law right of freedom to contract at issue here, should presumptively be given prospective application.  State, Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 163 (N.J. 1983).[1]  However, "[t]he rule favoring prospective application . . . is one only of statutory interpretation."  Twiss v. State, Dept. of Treasury, Office of Fin. Mgmt., 591 A.2d 913, 915 (N.J. 1991).  New Jersey courts consider several factors to determine if the Legislature intended to retroactively apply a statute.  See Gibbons v. Gibbons, 432 A.2d 80, 84-85 (N.J. 1981).  A court should consider is whether the statute is curative and designed merely to carry out or explain the intent of an existing statute.  Id.  Also, a

---

[1] The Court applies the substantive law of the State of New Jersey pursuant to the mandates of Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  "A federal court under Erie is bound to follow state law as announced by the highest state court."  Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007).  However, when the highest court has not addressed the issue and "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 174 (3d Cir. 2005) (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)).

court should consider whether the reasonable expectations of the parties warrant retroactive application.  Id.  The last factor the court should consider is whether the Legislature expressed an explicit or implicit intent to apply the statute retroactively.  Id.  The Legislature's intent is explicit if it is "stated in the language of the statute or in the pertinent legislative history," and implicit if it is "necessary to make the statute workable or to give it the most sensible interpretation."  Id.

Even when these factors favor the conclusion that the Legislature intended for the statute to be retroactively applied, the Court must nonetheless consider whether retroactive application would result in manifest injustice.  Id. at 85.  Manifest injustice does not mean that a party is merely prejudiced because it relied on a law that has been subsequently changed.  Rather, "the essence of the inquiry is whether . . . the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively."  Id.  Ultimately, the determination involves a weighing of equitable concerns.  See Edgewater Inv. Assocs. v. Edgewater, 510 A.2d 1178, 1185 (N.J. 1986).

Two panels of the New Jersey Appellate Division addressed whether N.J. Stat. Ann. § 17:28-1.1(f) applies retroactively to claims filed under policies that expired years before the Amendment was passed.  See Olkusz v. Brown, 951 A.2d 1069 (N.J. Super. Ct. App. Div. 2008), and Hand v. Philadelphia Ins. Co., 973 A.2d 973 (N.J. Super. Ct. App. Div. 2009).  Both the Olkusz and Hand courts considered the Gibbons factors and ultimately declined to apply N.J. Stat. Ann. § 17:28-1.1(f) retroactively to the claims before them.  Neither court was confronted with the issue of whether N.J. Stat. Ann. § 17:28-1.1(f) should be given limited retroactive application to reform only the finite

number of policies existing on the Amendment's effective date where, as here, the accident occurred after the legislation was passed. However, the reasoning in Olkusz and Hand directs how N.J. Stat. Ann. § 17:28-1.1(f) should be applied to the circumstances of this dispute.

In Olkusz, the court addressed the three factors justifying retroactive application and determined that "none of the factors militate in favor of retroactivity here." Olkusz, 951 A.2d at 1073. The court stated that "the parties' expectations must be gauged by the legal principles governing the common law right of freedom to contract prevailing during the time of the accident." Id. at 1075. The Olkusz court reasoned that because the accident at issue occurred three years prior to the passage of the Amendment, when Pinto was the controlling law, the parties could not have reasonably predicted that the policy's UM/UIM step-down clause would be invalidated and unenforceable. Id. As a result, the court held that N.J. Stat. Ann. § 17:28-1.1(f) "must be applied *prospectively* from the date of its passage by the Legislature." Id. (emphasis added). The court clarified its meaning of prospective application by stating that "[a]ny UM/UIM claim predicated upon an *accident* which predates the adoption of [the Amendment] must be governed by the legal principles articulated by the New Jersey Supreme Court in Pinto . . . ." Id. (emphasis added).

The court also found no curative design to warrant retroactive application because "the [Amendment] expresses, for the first time, the public policy position of the Legislature on the propriety of step-down clauses; the prohibitory language in the [Amendment] does not clarify or expand upon a preexisting statutory provision, which the court in Pinto may have overlooked or misunderstood." Id. at 1073. As to the

7

Legislature's expressed intent, the court concluded without analysis that "[this] factor is inapplicable on its face. Neither the statute nor the accompanying legislative statement addresses the question of retroactivity." Id. Although the court recognized that the Legislature was silent as to an express intent, it did not address the Legislature's implicit intent as to how N.J. Stat. Ann. § 17:28-1.1(f) should be applied to existing policies.

The Hand court conducted the legislative intent analysis that was not addressed in Olkusz. The court reasoned that although the Legislature did not expressly address the issue of retroactivity, the language of N.J. Stat. Ann. § 17:28-1.1(f) implies a clear intent to reform policies in existence on the Amendment's effective date. Hand, 973 A.2d at 982. First, the court explained that the statute's reference to policy "renewals" indicates an intention to affect existing policies. Id. ("By making the prohibition applicable to renewals of automobile insurance policies, it would seem the Legislature clearly intended to affect policies in existence as of the effective date of the act, whose renewals, absent amendatory riders for example, might not remove the prohibited language of the step-down clause.") Next, the court reasoned that the statute's direction that "[a] policy . . . shall be deemed to provide the maximum . . . [UM/UIM] motorist coverage available under the policy" indicates further intent to reform existing policies. Id. ("Presumably, new policies-those issued after September 10, 2007 would not contain the prohibited step-down clause because the first sentence of the Amendment prohibits them from being issued in that form. Thus, those insurance contracts would not need reformation.") Based on this analysis, the Hand court concluded that "the Legislature impliedly intended to reform all commercial vehicle policies in existence on the effective date of the Amendment." Id. at 983.

The court next turned to whether retroactive application would result in manifest injustice. The court reasoned that if N.J. Stat. Ann. § 17:28-1.1(f) was retroactively applied to all claims not barred by the six-year statute of limitations, the universe of potential claimants would be vast and uncertain. Because the policy at issue expired and the accident occurred years before the Amendment was enacted, the insurer would have no way to anticipate or minimize the number of claims brought by employees seeking full UM/UIM benefits. Id. at 985. The court held that "any public interest served is outweighed by the 'deleterious and irrevocable' effects upon not only the defendant, but other insurers, if the Amendment was applied retroactively under the facts of this case." Id. However, the court noted that because the facts were not presented, it did not need to determine "whether it would be manifestly unjust to apply the Amendment in a limited retroactive fashion to only those contracts of insurance extant on the Amendment's effective date, thereby limiting the Amendment's retroactive effect to a finite set of insurance policies, as opposed to an uncertain universe of potential claims." Id. at 986 n.8.

### III. Analysis

Zurich makes two arguments in support of its contention that the Zurich policy's "Limit of Insurance" clause is applicable to Sexton's claim. First, Zurich argues that N.J. Stat. Ann. § 17:28-1.1(f) only applies prospectively to policies entered into after September 10, 2007 pursuant to the Appellate Division's direction in Olkusz. (Zurich's S.J. Br., p. 11.) Second, Zurich contends that application of N.J. Stat. Ann. § 17:28-1.1(f) to the facts of this case would result in manifest injustice because it would void a valid, consensual agreement entered into when Pinto was the controlling law. (Id. at p. 14-15.)

9

Zurich's argument fails on both counts.

Contrary to Zurich's contention, Olkusz does not stand for the proposition that N.J. Stat. Ann. § 17:28-1.1(f) only applies prospectively to *policies* entered into after the legislation was passed. Rather, the court held only that a claim predicated upon an *accident* which predates the Amendment must be governed by the law articulated prior to the Amendment's passage. Therefore, the Olkusz court's holding is not at odds with the Hand court's reasoning that the Legislature clearly intended to reform policies existing on the Amendment's effective date. Because the Zurich policy was in existence on September 10, 2007, and Sexton's accident occurred approximately three months after the Amendment went into effect, N.J. Stat. Ann. § 17:28-1.1(f) is applicable to the present claim.

Further, application of N.J. Stat. Ann. § 17:28-1.1(f) in this case does not result in manifest injustice because the deleterious and irrevocable effects present in Hand are not present here. Although it can be said that Zurich had a reasonable expectation that the "Limit of Insurance" clause in the policy would be valid and enforceable at the time of formation, Zurich's expectation must be gauged by the legal principles controlling at the time of the accident. See Olkusz, 951 A.2d at 1075; Hand, 973 A.2d at 985. Unlike in Olkusz or Hand where the accidents occurred years prior to the passage of the law prohibiting UM/UIM step-down clauses, Sexton's accident occurred three months after the Amendment was passed. Therefore, Zurich could anticipate the application of N.J. Stat. Ann. § 17:28-1.1(f) to Sexton's claim.

Also, because N.J. Stat. Ann. § 17:28-1.1(f) only applies to accidents occurring after the passage of the Amendment, Zurich was able to accurately calculate its potential

exposure to increased liability.  The finite number of potential claimants seeking full UM/UIM benefits for accidents occurring after the legislation's effective date is significantly smaller than the uncertain universe of potential claimants restrained only be the statute of limitations.  See Hand, 973 A.2d at 986 n.8.  Lastly, the Zurich policy contained a provision that allowed Zurich to cancel the policy for any reason with thirty days written notice.  (Plaintiffs' S.J. Br., Ex. A.)  Therefore, unlike the insurers in Olkusz and Hand, Zurich was able to minimize its potential exposure to increased liability by cancelling existing policies after the Amendment was passed.  The Court must balance the inconvenience to Zurich with the deleterious impact that the arbitrary application of step-down clauses has on the lives of New Jersey employees who are injured while in the service of their employers.  Weighing these equitable concerns, application of N.J. Stat. Ann. § 17:28-1.1(f) does not result in manifest injustice in this case.

## CONCLUSION

Because Sexton's UM/UIM claim is predicated upon an accident which took place three months after the passage of the Amendment, the "Limit of Insurance" clause contained in the Zurich policy is unenforceable pursuant to N.J. Stat. Ann. § 17:28-1.1(f).  Therefore, Defendant's motion for summary judgment will be denied and Plaintiffs' cross-motion for summary judgment will be granted.  An appropriate Order shall follow.

Dated: May 10th, 2011

　　　　　　　　　　　　　　　　　　　　/s/ Joseph H. Rodriguez
　　　　　　　　　　　　　　　　　　　　Hon. Joseph H. Rodriguez,
　　　　　　　　　　　　　　　　　　　　United States District Judge